# JAMES C. FRANCIS v. CHARLES A. SMITH.

Springfield Court of Appeals, December 6, 1922.

1. **APPELLATE PRACTICE: Findings in Equity Cases Not Conclusive.** In equity cases, appellate courts are not bound by the findings of the lower court.

2. **BILLS AND NOTES: Purchaser from Bona-fide Holder is Protected.** Even though a purchaser of a note from an indorsee had facts before him such as would put him on inquiry concerning the validity of the note, an injunction, restraining him from collecting or negotiating the note, would not thereby be justified unless it was shown that his assignor had such knowledge.

3. ———: **Evidence Insufficient to Show That Note Was Procured by Fraud.** In a suit by the maker of a note to enjoin a transferee from collecting or negotiating it on the ground that it was given as part of the purchase price of a stolen automobile, evidence *held* insufficient to show that defendant knew, or by the exercise of ordinary care could have known, that the car was stolen, and was not the property of the payee of the note, and that the note originated in fraud.

Appeal from the Circuit Court of St. Clair County.— *Hon. C. A. Calvird,* Judge.

REVERSED.

*Hargus & Johnson* for appellant.

(1)   This being an equity case, this court is not bound by the findings of the lower court. State ex rel. v. Allen, 242 S. W. 79; State ex rel. v. Jarratt, 183 Mo. 217; Derry v. Frielder, 216 Mo. 194; Bank v. Slattery, 166 Mo. 620.   (2)   There is no evidence on which to base the finding and judgment of the court. Downs v. Horton, 230 S. W. 103; Ensign v. Crandell, 231 S. W. 675; State ex rel. v. Greenville Bank, 187 S. W. 597.   (3)   If the first endorsee in good faith and for value purchased a negotiable note before maturity and subsequently assigns the same, then this endorsee acquires good title, even though he at the time may have had notice of the fraud in the inception of the paper. The First National Bank of Cameron v. Stanley, 46 Mo. App. 440; Craig

v. Zimmerman, 87 Mo. 478; State ex rel. Hadley v. Green-
ville Bank, 187 S. W. 597, 1. c. 598.

*Lee E. Crook* and *W. A. Dollarhide,* for respondent.

(1)  It is true this court is not bound by the find-
ings of the lower court but where the witnesses testify
orally the appellate court will defer to the finding of the
chancellor where there is a conflict in the testimony.
Erskine v. Loewenstine, 82 Mo. 309.  (2)  The note was
procured by fraud or under such circumstances as to
amount to fraud and in such case the burden is on the
holder of the note to show that he took it in good faith
for value and without any notice of defective title.  Sec-
tions 838, 841 and 845, R. S. 1919; Jobes v. Wilson, 140
Mo. App. 292; Bank v. Miller, 143 Mo. App. 1. c. 266.
(3)  Under all the facts and circumstances in this case
it was for the court sitting as a trier of the facts to deter-
mine whether or not the appellant sufficiently sustained
his burden of proof.  Miller v. Peoples Savings Bank,
193 Mo. App. 508.

FARRINGTON, J.—This is a suit brought by the
plaintiff below to enjoin the negotiation, transfer or en-
forcement of a promissory note which was given by the
plaintiff to one Ayres, sold by Ayres to one Robertson
and by Robertson sold to the defendant Smith.  The
trial court found in favor of the plaintiff and by his
judgment granted the prayer in the petition.

We have carefully read the record which has been
brought here and examined the authorities cited by the
attorneys, and cannot come to the conclusion reached by
the trial judge as to the important fact in this case.  The
trial judge found that when the defendant purchased
the note in suit he had knowledge that the same had been
procured by fraud, with the intent to defraud and cheat
the plaintiff, or by the exercise of ordinary care could
have ascertained that fact; and that the facts and cir-

cumstances were sufficient to put defendant on notice that said note had been procured from plaintiff by fraud. We do not think that the preponderance of the evidence will sustain that finding.

The respondent has made a statement of the case, which we herein adopt except the last paragraph of same, which we have italicized, and which statement is as follows:

## I.

"On December 7, 1921, the plaintiff James C. Francis, filed a petition in the Circuit Court of St. Clair County against the defendant, Charles A. Smith. By this petition plaintiff sought to have the court cancel a promissory not for one thousand dollars executed by plaintiff in favor of one Charles Ayres, the petition charging that this note was procured by fraud, and that defendant took the note with knowledge of such fraud. No objections were made to the sufficiency of the petition.

Defendant filed answer March 13, 1922, which answer is a general denial.

The case was tried at the March Term, 1922, of said court and decree rendered in favor of the plaintiff, the respondent herein, enjoining defendant from negotiating, transferring or enforcing payment of said note and cancelling same.

Thereupon, the defendant, the appellant herein, filed motions for new trial and in arrest of judgment which were continued to the June Term, 1922, of said court and then overruled.

## II.

On April 12, 1921, the respondent bought an automobile of one Charles Ayres paying therefor two hundred dollars in cash and giving the note in controvery to Ayres for one thousand dollars due one year after date.

At the time of sale of car and for some time prior thereto Ayres was a trader in Kansas City dealing in secondhand automobiles and other property. His fam-

ily resided at Humansville. The car mentioned was stolen. It was taken from the respondent July 5, 1921, by the true owner or his agent. On account of this and similar transactions Ayres disappeared and became a fugitive from justice. He was insolvent at the time he went into hiding.

Francis was born and reared in the vicinity of Collins in St. Clair County.. The Appellant, Smith, resides in the same community or did at the time of these transactions. The fact of Francis losing the car because it was stolen became generally known in the, little town of Collins and its environs within a day or two after July 5, 1921.''

*"This note went into the hands of appellant by assignment from G. C. Robertson some time after 9th day of July, 1921, and at a time when the appellant knew that the note had been procured by fraud."* (Italics ours).

The case, as we view it, turns entirely on the finding of facts, as the attorneys for both plaintiff and defendant agree on the law. The evidence upon which this must be determined is substantially as follows: Ayres was a second-hand automobile dealer in Kansas City. In April, 1921, he sold a second-hand automobile to the plaintiff receiving two hundred dollars in cash and a note for one thousand dollars, which note was due in one year after April 12, 1921. Some time after that date, a number of witnesses testified, the note was offered for sale by Ayres in Collins, Missouri, being the home of Smith and near the home of Ayres. The record evidence shows that one Robertson purchased this note from Ayres on June 7, 1921, for $800. The check paying Ayres for the note was dated at Collins, Mo., June 7, 1921, and in the regular course of business was paid by the Bank of Collins on June 16, 1921, same being shown by perforation in the check. The record further shows that several days after purchasing this note, to-wit, on June 11, 1921, the defendant purchased the note from Robertson, evidenced by his check for $900 drawn on the Bank of Col-

lins and paid, as shown by perforation in the check, on the same day. It was nearly a month after this time when it became known in Collins, Missouri, to every one so far as any actual evidence is concerned, that the car which Ayres had sold to the plaintiff was a stolen car. On about July 4th or 5th, 1921, the true owner of the car took it away from plaintiff. At this time the talk became very prevalent concerning the fact that Ayres had sold plaintiff a stolen car and had taken his note for $1000 as part payment therefor. There is no evidence of a substantial character showing that Ayres had any close dealings, or was associated in any way with either Robertson, the first purchaser, or Smith, his assignee. The only testimony we can find upon which the finding of the trial court could be based was that of several witnesses who testified that a few days after it became known in Collins that the car was a stolen car, Robertson, the purchaser from Ayres, stated in their presence that he was the owner of the note and intended to enforce payment. None of these witnesses testified that Robertson had any knowledge of the fraud on June 7, the day he purchased it from Ayres.

The only theory that would prevent the defendant from enforcing this note that we can see under the testimony in this case, would be to find that Smith in fact never bought the note but was holding it for Robertson, and that Robertson knew when he purchased it that it was given in a fraudulent transaction. The testimony of Smith and Robertson both contradicts this statement, and the checks which were introduced in evidence show that the payments were made through the bank long prior to any knowledge in Collins, or in fact anywhere else, that the car was a stolen car, to our minds outweighs evidence given by parties who it is shown are relatives of persons who were at the same time in litigation with Robertson on other matters and who testified that Robertson in the absence of Smith had made the statement that he was the owner of that note after it became known

that the car was stolen. The evidence of Robertson and Smith, borne out by the checks given for the purchase of this note, clearly shows that it was purchased nearly a month before any one who testified in this case even knew that the car had been stolen. There is no testimony that Robertson or Smith had any knowledge that the note was given in a fraudulent transaction, and the amount that each of them paid for it was not so small as should put an ordinarily careful man on inquiry. The check shows Robertson paid $800 for the note, which at the time it was paid was not an unreasonable discount on paper during the strenuous scarcity of ready cash in June, 1921, and the defendant paid $900 for the note to Robertson. The defendant had talked of buying this note prior to this time, and although an attempt was made to show that he had given some intimation there might be some danger in the note, plaintiff's witnesses failed to testify to any such fact. We again state that the only evidence tending to show that either Robertson or Smith knew that anything was wrong with this note, or that Smith was not the owner of the note himself, was that of witnesses who testified that Robertson told them one night as he drove into a garage, after it became generally known that the car was stolen, that he still owned the note and expected to enforce it. This testimony in our judgment is insufficient entirely to show that either Smith or Robertson knew of the fraud when the note was purchased, and is outweighed by the testimony of Smith and Robertson, corroborated by the record evidence of their checks passing through the bank showing that Smith had purchased the note from Robertson nearly a month prior to the general knowledge of the sale of the stolen car.

The rule is well settled in this State that in equity cases appellate courts are not bound by the findings of the lower courts. [See State ex rel. v. Allen, 242 S. W. 79.] We may say further that even though it were shown that Smith, when he purchased the note, had some

intimation, or had such facts before him as would put him on inquiry concerning the validity of the note, still this would not justify restraining him from collecting or negotiating the note unless it was shown that Robertson, his assignor, had such knowledge. [See First National Bank of Cameron v. Stanley, 46 Mo. App. 440; Craig v. Zimmerman, 87 Mo. 478; State ex rel. Hadley v. Greenville Bank, 187 S. W. 598.]

It must be borne in mind that this is not a suit on the note for its enforcement but a petition asking for an injunction. This petition alleges that Smith knew or by the exercise of ordinary care and diligence could have known that the car was stolen and not the property of Ayres and that the note originated in fraud. The burden remained on the plaintiff to sustain this charge by the proof, and as we view the evidence, he has failed in that respect. For that reason the judgment of the trial court is reversed. *Cox, P. J.,* and *Bradley, J.,* concur.